**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH HOWARD GEORGE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-09-1202** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **PENNSYLVANIA DEPARTMENT of** | : | |
| **CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**I.      Introduction**

On June 24, 2009, Keith Howard George, a prisoner presently incarcerated at the Dallas State Correctional Institution (SCI-Dallas), in Dallas, Pennsylvania, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to his serious medical needs and violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, *et seq*., when they failed to grant him a permanent single cell designation due to his medical disability, Benign Muscular Fasciculation Syndrome.  (Doc. 1, Compl.)

The Pennsylvania Department of Corrections (DOC) and the following DOC employees are named as defendants:  Michael Klopotaski, Superintendent; Thomas Leskowsky, Acting Health Care Administrator and Facility Disabilities Accommodation Coordinator; Robin Lucas, Inmate Grievance Coordinator and Assistant to the Superintendent; Laurie Samulesich, Records Clerk; Jerome Walsh,

Deputy Superintendent for Centralized Services; and Dorinda Varner, Central Office Grievance Coordinator.[1]  Stanley Bohinksi, D.O., the contract Medical Director at SCI-D, who is not a DOC employee, is also named as a defendant in the Complaint.[2]  All defendants are named in their individual and official capacities. (Doc. 1, Compl. at ¶ 12.)

Presently before the Court is Dr. Bohinski's and the DOC defendants' separate Motions to Dismiss Plaintiff's Complaint (docs. 8 and 14), and Plaintiff's Motion for Default (doc. 18).  For the reasons that follow, Dr. Bohinksi and the DOC Defendants' motions to dismiss will be granted and Mr. George's Motion for Default will be denied.  If desired, Plaintiff will be granted the opportunity to file an amended complaint only with respect to his ADA claim against the DOC itself.

## II.    Standard of Review

Fed. R. Civ. P. 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  The court is not limited to evaluating the complaint alone.

---

[1]  These defendants will be collectively referred to as the "DOC defendants".

[2]  Dr. Bohinksi and the DOC defendants are represented by separate counsel in this matter.

The Court may also consider documents attached to the complaint and matters of public record. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009)(citing *Lum v. Bank of America*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)).

While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), to survive a motions to dismiss a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). The mere possibility of misconduct falls short of meeting this plausibiilty standard. *Iqbal*, __ U.S. at ___, 129 S.Ct. at 1949-50. Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at ___, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Id.* at __, 129 S.Ct. at 1950. "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, the Court conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, we separate the factual elements from the legal

elements and disregard the legal conclusions. *Id.* at 210 -11. Second, we
"determine whether the facts alleged in the complaint are sufficient to show that the
plaintiff has a " 'plausible claim for relief' " *Id.* at 211 (quoted case omitted). In other
words, a complaint must do more than allege the plaintiff's entitlement to relief. A
complaint has to "show" such an entitlement with its facts. *Phillips,* 515 F.3d at 234
- 235.

Finally, we note that pro se pleadings are held to a less stringent standard
than formal pleadings drafted by attorneys and are to be liberally construed. *See
Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081
(2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Pro se litigants are to
be granted leave to file a curative amended complaint even when a plaintiff does not
seek leave to amend, unless such an amendment would be inequitable or futile.
*See Phillips*, 515 F.3d at 245 - 246 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d
Cir. 2004)). However, a complaint that sets forth facts which affirmatively
demonstrate that the plaintiff has no right to recover is properly dismissed without
leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir.
2002).

## III.    Background

The following facts are taken from Mr. George's Complaint and the
documents attached to it. For the purposes of deciding the defendants' motions to
dismiss, all of the facts are taken as true, and have been construed in the light most

favorable to Mr. George.

During his final years of service in the Army, staff at the Walter Reed Institute of Technology diagnosed Mr. George with Benign Muscular Fasciculation Syndrome (BFS) for which there is no known treatment. (Doc. 1, Compl. at ¶ 13.) Plaintiff was given pain killers and ordered to keep his stress level down. *Id.*

Mr. George is presently serving a double life sentence at SCI-Dallas. (*Id*. at ¶ 14.) In the early 1990's, Mr. George sought to control the stress that aggravated his BFS condition by requesting a single cell housing assignment. His initial request was denied. (Doc. 1-4, Pl.'s Exs. at R. 4.)[3] However, in "the early 2000's," SCI-Dallas officials granted Mr. George an "A Code" housing assignment. Such a designation permits an inmate to occupy a single cell (i.e. without a cell mate) as long as the prison population does not increase to the point of requiring officials to place another inmate in the same cell as an A code designee. (Doc. 1 at ¶ 15; Doc. 1-4 at R. 4.) On the other hand, a "Z Code" housing assignment is a medical designation requiring prison officials to place the inmate in a single cell regardless of the prison population. (Doc. 1 at ¶ 15.) While under an A code, Mr. George's quality of life improved and he was able to reduce his need for pain medication by 75%. (*Id*. at ¶ 16.) However, "a few years" ago due to an increase in prison population and the corresponding need for additional cell space, Mr. George was given a cellmate. (*Id*. at ¶ 17; Doc. 1-4 at RR. 4 - 5.)

---

[3] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

Mr. George claims to be experiencing increased health problems as a result of the stress of double celling with another inmate. In November 2007, Mr. George experienced a severe cramp in his left bicep which "shot into his chest." Several days after this attack, when the pain would not subside, he sought medical attention. Mr. George claims his increased stress triggered this attack as well as caused an elevation in his blood pressure. Mr. George now takes medication to control his hypertension. (*Id*. at R. 7.) Plaintiff also reports an unidentified medical staff member informed him that he has "type one kidney failure." (Doc. 1 at ¶ 18.) Thirty days after he requested, and was given, a change in his pain medication his blood tests revealed that his kidney condition "was corrected." (*Id*.) As of January 28, 2009, Mr. George's kidneys functions were "back to normal." (Doc. 1-4 at R. 22).

On August 2008, Mr. George requested SCI-Dallas staff grant him a permanent single cell accommodations due to his BFS medical disability. *See* Doc. 1-4 at RR. 4 - 7. His request was referred to the institution's Facility Disabilities Accommodation Coordinator, Thomas Leskowsky, Acting Health Care Administrator. (Doc. 1-2 at RR. 2 - 3.) Mr. Lewskowsky consulted the medical department regarding Mr. George's request.

It was learned during Mr. Lewskowsky's inquiry into this matter that neither Dr. Kale, a psychiatrist, nor Dr. Bohinski, a medical doctor, "could justify the accommodation of a single cell based on" Mr. George's particular medical condition and that "there has not been any noted health changes or medical incidents directly related to Fasciculation syndrome documented in his medical record in recent time." (*Id*. at R. 2.) Mr. George's hypertension is presently controlled as a result of

medication and regular chronic care clinic visits. No notations or complaints were found in Mr. George's medical chart relative to the incident of bicep pain. (*Id*.) Dr. Kale reported that Mr. George did not suffer from psychosis. (*Id*. at ¶ 3.) "Dr. Bohinski noted that there was no justification for a single cell accommodation, and the current housing assignment of 'A' code is appropriate and accommodates [Mr. George's] current health status." (*Id*.) Based on these findings, on September 19, 2008, Superintendent Klopotoski found that Mr. George's "current housing code is appropriate. A single cell accommodation for medical reasons is not recommended at this time." (*Id*. at RR. 2 - 3.) Superintendent Klopotoski noted that his decision did not question Mr. George's BFS diagnosis, but rather reflected that his condition did not limit one or more of his major life activities. (*Id*. at R. 3.)

Mr. George appealed Superintendent Klopotoski's decision to final review. (*See* Doc. 1-4 at R. 24.) Dorina Varner, the Chief Grievance Officer, referred final review of the grievance to the DOC's Bureau of Health Care Services. (*Id*.) On March 23, 2009, Mr. George was advised that:

> the Bureau of Health Services has reviewed [his] grievance and determined that the medical care provided to [him] by the medical department at SCI Dallas has been reasonable and appropriate. Z-code status is determined by the physician based on specific criteria. The physician does not feel that you warrant Z-code status. No evidence of neglect or deliberate indifference has been found.

(*Id*. at R. 25.)

## IV.    Discussion

Mr. George alleges that the DOC defendants and Dr. Bohinski's failure to award him a Z code, a permanent single cell accommodation, based on his diagnosis of BFS, violates his Eighth Amendment right to be free from cruel and unusual punishment as well as violates Title II of the ADA.  Several of the DOC defendants seek dismissal based on Mr. George's failure to plead their personal involvement in the alleged constitutional violations.  Next, both the DOC defendants and Dr. Bohinksi claim that Mr. George's disagreement with his treating physician's professional's judgment that a mandatory single cell housing status is not medical indicated does not rise to the level of an Eighth Amendment claim.  Finally, all defendants aver that Plaintiff has failed to allege facts sufficient to state a claim under Title II of the ADA.  We will address each argument in turn.

> A.    *Lack of Personal Involvement of Defendants Lucas, Samulevich and Varder.*

The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*)(citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the

-8-

events underlying a claim. *Iqbal, supra*, __ U.S. at __, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck*, 326 F. App'x 97, 101 (3d Cir. 2009)(per curiam)(nonprecedential).

Mr. George names SCI-Dallas' Grievance Coordinator, Robin Lucas; SCI-Dallas' Records Clerk, Laurie Samulevich; and the DOC's Central Office Grievance Officer, Dorina Varder as defendants. Yet, Plaintiff fails to provide even the most basic of allegations as to these defendants. In fact, aside from being named as defendants there is no mention of their personal involvement in the alleged constitutional deprivations asserted in the Complaint. Furthermore, Mr. George cannot satisfy the personal-involvement requirement as to these defendants based on their participation in the after-the-fact review of an administrative remedy request or appeal. *See Rode*, 845 F.2d 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Winn v. Dep't of Corr.*, 340 F. App'x 757 (3d Cir. 2009)(nonprecedential) (denial of an administrative appeal does not in itself give rise to a constitutional claim); *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (nonprecedential) (supervisory defendants "sued based on their failure to take corrective action when grievances or investigation were referred

-9-

to them"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)(nonprecedential)(a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prison grievance did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *see also Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005)(nonprecedential) (failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).  Consequently, "Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate." *Owens-Ali v. Pennell*, No. 09-556, 2009 WL 4547059, *5 (D. Del. Dec. 04, 2009).  Accordingly, these defendants (Robin Lucas, Laurie Samulevich and Dorina Varder) will be dismissed for lack of personal involvement.

However, Mr. George will be afforded the opportunity to amend his complaint to allege the personal involvement of these defendants in the underlying claims. Plaintiff is cautioned that if he chooses to file an amended complaint as to these defendants, he must provide sufficient factual allegations as to each defendants' wrongdoing so as to provide each defendant with fair notice of what the claim is against them and the grounds upon which it rests.

B.    *Mr. George's Eighth Amendment Medical Claim*.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  *Estelle v Gamble*, 429 U.S. 97, 103-04, 97 S.Ct. 285, 290 - 91, 50 L.Ed.2d 251 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  An inmate must satisfy a two-part conductive test: a showing of a serious medical need and a prison official's deliberate indifference to that need.  *See Farmer v. Brennan,* 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(quoted case omitted).  A serious medical need may also be established if the denial or delay of medical care results in the unnecessary and wanton infliction of pain, a lifelong handicap, or permanent loss.  *Id*.

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety.  *See Farmer,* 511 U.S. at 837-38, 114 S.Ct. 1970.  Without the requisite mental state, a prison official's conduct alone will

not constitute deliberate indifference.  *Id.*  Deliberate indifference does not require an express intent to cause harm, but it does require more than mere negligence.  *Id.* at 835 - 86, 114 S.Ct. at 1978.  In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed.  *Estelle,* 429 U.S. at 104 - 105, 97 S.Ct. at 291.

Not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.  If a prisoner is under the care of a medical experts, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner . . . ."  *Spruill,* 372 F.3d at 236; *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993).  Furthermore, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..."  *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.  Likewise, mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of deliberate indifference.  *See Spruill,* 372 F.3d at 235.  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice."

*Estelle*, 429 U.S. at 107, 97 S.Ct. at 293. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." *Spruill*, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105 - 06, 97 S.Ct. at 291 - 92. In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer,* 991 F.2d at 69. "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)(internal quotation and citation omitted).

Mr. George asserts that the DOC defendants' and Dr. Bohinski's denial of a permanent Z code, or single cell housing designation, in light of his diagnosis of benign muscular fasciculation syndrome for which there is no known treatment (except for the use of pain medications and the reduction of stress), is proof that they were deliberately indifferent to his serious medical need. (Doc. 1, Compl.) A review of the Complaint and the documents attached to it do not support Mr. George's Eighth Amendment claim of deliberate indifference to a serious medical

need by either Dr. Bohinski or the DOC defendants.

As established by the facts set forth in the Complaint and the documents attached to it, Mr. George's request for a Z code triggered an evaluation of his medical and psychological health. The result of this clinical review found that Mr. George's "A code" designation was appropriate and accommodates [Mr. George's] current health status." (Doc. 1-2 at R. 3.) The physician's based their decision on the fact that "there has not been any noted health changes or medical incidents directly related to Fasciculation syndrome documented in the medical record in recent time." (Doc. 1-2 at R. 2.) Although he has not been single celled since the mid-2000's, Mr. George's treating physicians did not believe a single cell was medically necessary for treatment of his BFS — "there [is] no justification for a single cell accommodation" due to Mr. George's BFS. (*Id*.) While Mr. George disagrees with Dr. Bohinksi's decision as to what is the best course of treatment for his BFS, which in his opinion would be enhanced by a single cell, this dispute does not elevate his claim to the level of an Eighth Amendment claim. *See Spruill*, 372 F.3d at 218.

Even though Mr. George says that his stress level has increased since double celling, and that he now suffers from hypertension and other side effects of his BFS, these allegations also do not push the averments of the Complaint across the Eighth Amendment line because Mr. George concedes in his Complaint that he is receiving medical treatment for his various ailments, albeit care he deems to be personally unsatisfactory and incomplete without a medically mandatory single cell housing assignment. Nonetheless, there are no assertions in the Complaint that

suggests that Mr. George has been denied medical care for his BFS, or any other medical condition, by Dr. Bohinksi or other medical staff. There are no allegations of medical complaints related to his BFS that have gone unaddressed.

Finally, to the extent that Mr. George suggests that Dr. Bohinski has somehow mistreated his disease by not awarding him a Z code to manage his stress when there is "no known treatment" for BFS also does not advance his Eighth Amendment claim. (Doc. 1 at R. 4 ¶ 13.) To the contrary, it undercuts his reasoning. If there is no known treatment for his disease, the fact that Mr. George's physicians continue to see him and monitor his condition and complaints underscores that he is receiving medical treatment for his BFS, but it is not his chosen form of treatment which would include a Z code. Inmates, however, do not have a constitutional right to the medical treatment of their choice. *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Dr. Bohinski, exercised his medical opinion that a Z code designation was not medically justifiable in light of the lack of documented medical complications experienced by Mr. George due to his BFS since he was double celled. Moreover, those "complications" experienced by Mr. George were addressed by SCI-Dallas' medical staff through medication and on-going monitoring of his conditions. The facts as alleged in the Complaint demonstrate a divergence in medical opinion between Mr. George and his treating physician and do not amount to a claim of

deliberate indifference.[4]

Next, absent an averment that the DOC defendants believed that Dr. Bohinksi was mistreating or failing to treat a Mr. George, they cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff. *See Spruill 372 F.3d at 236* (when "a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Durmer, 991 F.2d at 69* (same). Mr. George fails to assert how the DOC defendants were deliberately indifferent to his medical needs when he acknowledges that they relied upon his treating physician and psychologist's statements that a Z code was not medically necessary to deny his request for single cell. As such, Plaintiff fails to allege any facts to suggest that the DOC defendants, who are not physicians, knew or should have known that the medical treatment he was receiving from the medical staff was inadequate or put him at substantial risk of harm simply because he was not awarded a Z code for medical reasons. Under these circumstances, Mr. George fails to state an Eighth Amendment violation for deliberate indifference to a serious medical need against Dr. Bohinski or any of the DOC defendants.

---

[4] To the extent that Keith George believes that Dr. Bohinski has turned a "deft ear to [his] condition ... [and] gave the impression that he did not want to hear anymore of [his] complaints" regarding his stress levels, (Doc. 15 at R. 6), we note that the institution's psychiatrist also evaluated his Z code request and did not find it medically necessary. *See* Doc. 1-2 at R. 2. Mr. George simply disagrees with the psychiatrist's and physician's findings that a Z code was not medically necessary given his condition and present health status.

C.    *The ADA Claim.*

Mr. George alleges that his diagnosis of BFS qualifies him as "disabled" pursuant to the ADA and requires an award of a Z code housing designation as a means of accommodating his condition which is exacerbated by the stress of double celling.  (Doc. 1, Compl.)  The DOC defendants and Dr. Bohinski contend that the ADA claim against them should be dismissed because individuals can not be sued under Title II of the ADA and because Mr. George's condition does not qualify as a "disability" for the purposes of the ADA.  (Doc. 10, Dr. Bohinski's Mot. to Dismiss Brf; and Doc. 17, Doc. 17, DOC Defs.' Mot. to Dismiss Brf.)  The Court agrees with both arguments.

The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  Title II of the ADA prohibits discrimination in connection with access to public services, requiring that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  It is well established that state prisons are "public entities" as defined by Title II of the ADA.  *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 1954 - 55, 141 L.Ed.2d 215 (1998); *Brown v. Pennsylvania  Dep't of Corrections*, 290 Fed. App'x 463, 467 (3d Cir. 2008).  Likewise it is clear that the plain language of § 12132 applies only to "public entities" and not individuals.  Under Title II of the ADA, plaintiffs may not sue individual defendants in their personal capacities, but

-17-

must instead sue the state, state entities, or defendants in their official capacities. *See Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 179 (3d Cir. 2002). Mr. George has sued each defendant in their personal and individual capacities. As such, Mr. George's claim against the defendants in their individual capacities are subject to dismissal as not cognizable under the ADA. However, the claims lodged against the defendants in their official capacities may proceed if, and only if, Mr. George can satisfy the requirements of an ADA claim.

A plaintiff need not prove all elements of a prima facie ADA case in order to survive a motion to dismiss. Rather, he must allege only material facts that, "in addition to inferences drawn from those factual allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998). To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefit of, a public entity's services, programs or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Maresca v. Blue Ridge Communications*, No. 09-2470, 2010 WL 407127, *2 (3d Cir. Feb. 5, 2010)(citing *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).

The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [or] (B) a record of such an impairment; or, (C) being regarded as having such an impairment." *See* 42 U.S.C. § 12102(2). "However, '[i]t is insufficient for individuals

-18-

attempting to prove disability status [under the ADA] ... to merely submit evidence of a medical diagnosis of an impairment.'" *Pritchett v. Ellers*, 324 Fed. App'x 157, 159 (3d Cir. 2009)(citing *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002)(overruled on other grounds by the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 353 (2008)). "Merely having an impairment does not make one disabled for the purpose of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota*, 534 U.S. at 195, 122 S.Ct. at 690. To prove disability, a plaintiff "must further show that the limitation on the major life activity is 'substantia[l].'" *Id*. To be substantially limited in a major life activity:

> an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily live. The impairment must also be permanent or long-term.

*Id*. at 198, 122 S.Ct. at 691. Disability must be assessed on a case-by-case basis, as it is an individualized inquiry. *Id*. at 198, 122 S.Ct. at 692.

Here, it is undisputed that Mr. George suffers from BFS. However, as noted above, merely having a physical impairment does not make one disabled under the ADA. Thus, the question is whether Mr. George has asserted sufficient evidence to suggest that his BFS substantially limits his ability to engage in any major life activity. Keith George fails to allege sufficient facts from which it can be inferred that he is a qualified individual with a disability. He makes no effort to establish in the

Complaint that his condition substantially limits any major life activity.[5]  Rather, he simply relies on the defendants' agreement that he suffers from BFS, a disease exacerbated by stress, and for which no known treatment, to conclude that he is "disabled" within the guidelines of the ADA.  The problem with this approach is that the documents he offers in connection with his Complaint demonstrate that Mr. George's psychiatrist and physician determined that such a housing status was not medically necessary due to the absence of any evidence in Mr. George's medical file to support his assertion that he suffers from any impairment as to any major life activity due to his BFS.[6]  *See* Doc. 1-2 at RR. 3 - 4.

Aside from his own assertion that he is a qualified individual with a disability under the ADA, Mr. George has not shown that he suffers from a disability that substantially limits one or more his major life functions and activities, and thus, does not qualify him as "disabled" under the ADA.  For these reasons, the Court finds that Mr. George has not plead a cognizable cause of action under the ADA.

---

[5]  "Major life activities" include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 382-83 (3d Cir. 2004).

[6]  While the Court is sympathetic to Mr. George's statement that in the mid-2000's, when single celled via his A code, his consumption of pain killers was reduced by 75% (doc. 1-4 at R. 22), this in and of itself does not demonstrate a disability or a substantial impairment of any life function. Furthermore, the fact that in 2007 he suffered a muscle spasm, albeit excruciatingly painful, also does not demonstrate that he suffers from a significant impairment of one or more of his life activities.  This fact is underscored by Mr. George's statement that he waited several days before seeking medical attention and that his medical records do not reflect complaints of similar reoccurrences.  *See* Doc. 1-4 at R. 7 ("Tuesday, November 20, 2007, I suffered a severe attack ... I went to sick-call on the 23rd.") and Doc. 1-2 at R. 3 ("A thorough review of your medical file indicates" no finding of a limitation of one or more major life activity.)  Likewise, the fact that he claims an unidentified individual told him he was in stage I kidney failure due to the pain medications does not demonstrate a substantial limitation in any major life activity.  Moreover, Mr. George himself states that his kidney functions are now "back to normal."  (Doc. 1-4 at R. 22.)  Thus, Mr. George has not demonstrated a record of impairment that substantially limits one or more major life activities.  *Howell v. Sam's Club #8160/Walmart*, 959 F. Supp. 260 (E.D. Pa. 1997).

-20-

However, Mr. George will be afforded the opportunity to amend his complaint to set forth sufficient facts to assert a prima facie ADA claim against the appropriate prison officials in their official capacities.

D.      *Plaintiff's Motion for Default.*

Mr. George claims that the DOC defendants failed to file a timely answer/pleading to his Complaint. Without unnecessary elaboration, Plaintiff's motion for default (doc. 18) will be denied. According to the docket, Mr. George filed the Complaint in this matter on June 24, 2009. The Court directed service of the Complaint on July 17, 2009. (Doc. 5.)

Pursuant to the Waivers issued, an answer or motion under Fed.R.Civ.P. 12 is due 60 days after the date the request for waiver is returned. In this case, on July 23, 2009, all of the DOC defendants, except for John Doe, returned their Waivers of Service. *See* Docs. 6 and 13. Thus, the DOC defendants were to answer or file a response to the Complaint on or before September 21, 2009. The DOC defendants filed a timely motion to dismiss on September 21, 2009. (Doc. 14.) The DOC defendants then filed a timely brief in support of their motion on October 5, 2009. (Doc. 17.) Mr. George then filed a motion for default asserting that the DOC defendants failed to answer or otherwise file a response to the Complaint noting that he had not received any response from the DOC defendants. (Doc. 18.) Yet, on October 27, 2009, Plaintiff filed his brief in opposition to the DOC defendants' motion to dismiss. (Doc. 20.)

Pursuant to Fed. R. Civ. P. 55(a), a party can only be held in default when

-21-

they have failed to plead or otherwise defend.  Here, the DOC's motion to dismiss was timely filed and the record is clear that Mr. George received a copy of defendants' motion as evidenced by his response to it.  As such, the DOC defendants are not in default, and Mr. George's motion for entry of default is without merit.

      E.    *John Doe Defendant.*

The Complaint in this matter was filed on June 24, 2009.  (Doc. 1, Compl.) Mr. George has also named an unknown John Doe defendant, who is alleged to be the Chief of Central Office Bureau of Health Care Services.  (Doc. 1 at ¶ 10.) More than 120 days have lapsed since the filing of the Complaint without Mr. George identifying this individual and service has not been made on the unknown defendant as required by Fed. R. Civ. P. 4(m).  Moreover, aside from identifying John Doe as a defendant in this action, there isn't a single allegations lodged against this defendant.  *See Rode*, 845 F.2d at 1207.  To the extent he sought to impose liability on this defendant based on his involvement in the review of his appeal of the denial of his Z Code status, this after-the-fact review is insufficient to yield personal involvement.  *Id.* at 1208; Doc. 1-4 at R. 25.

Section 1915(e)(2) states, in pertinent part, "the court shall dismiss the case at any time if the court determines that (B) the action . . .  (ii) fails to state a claim on which relief may be granted . . ." 28 U.S.C. § 1915(e)(2)(B)(ii).  An appropriate disposition of the claims against an unknown defendant is an order dismissing them without prejudice, so that Plaintiff's ability to bring an action within the limitations

period is preserved, should he later learn their identity.  *See Brown v. Our Lady of Lourdes Med. Ctr.*, 767 F. Supp. 618, 621 (D. N. J. 1991), *aff'd*, 961 F.2d 207 (3d Cir. 1992).  Consequently, the Complaint against John Doe will be dismissed, without prejudice, for lack of personal involvement in the underlying Eighth Amendment and ADA claims.

**V.      Conclusion**

Based on the foregoing, the Defendants' motions to dismiss (Docs. 8 and 14) will be granted.  Mr. George's claims against DOC defendants (Robin Lucas, Laurie Samulevich and Dorina Varder) are dismissed for lack of personal involvement. Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical need against all defendants is dismissed for failure to state a claim, as is his ADA claim.  Mr. George's Motion for Entry of Default (doc. 18) will be denied. Additionally, the Complaint against the John Doe defendant will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court will provide Mr. George with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of his constitutional or other federal rights.  *Iqbal*, at 1948-49.  Although accepted as true, the "factual allegations must be [sufficient] to raise a right to relief above the speculative level ..."  *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965 (citations

omitted).  Finally, the Court directs that any amended complaint supercedes the original complaint.  Therefore, all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived.

If Plaintiff fails to file an amended complaint the Court will dismiss the action.

An appropriate order follows.

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: March 11 , 2010**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH HOWARD GEORGE,          :
                              :
    Plaintiff        :
                              :          CIVIL NO. 3:CV-09-1202
  v.                          :
                              :          (Judge Caputo)
PENNSYLVANIA DEPARTMENT of    :
CORRECTIONS, e*t al.*,        :
                              :
    Defendants       :

# O R D E R

**AND NOW**, this <u>11th</u> day of **March, 2010**, it is ordered that:

1. Defendant Bohinski's Motion to Dismiss the Complaint (doc. 8) is granted pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim for which relief can be granted. The Complaint is dismissed as to Dr. Bohinski.

2. The DOC Defendants' Motion to Dismiss the Complaint (doc. 14) is granted pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim for which relief can be granted. The Complaint is dismissed as to defendants: the Pennsylvania Department of Corrections, Michael Klopotaski, Thomas Leskowsky, Robin Lucas, Laurie Samulesich, Jerome Walsh, and Dorina Varner.

3. The Complaint is dismissed, without prejudice, as to the unidentified John Doe defendant, Chief of the Bureau of Health Care Services pursuant to Fed. R. Civ. P. 4(m) and 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Mr. George's Motion for Default (doc. 18) is denied.

5. On or before March 26, 2010, Mr. George may file an amended complaint complying with the requirements of the accompanying memorandum. The amended complaint shall carry the same civil docket number (3:CV-09-1202) presently assigned to this matter.

6. The amended complaint shall be a short, plain, and concise statement of the medical claim and shall be a new pleading which stands by itself an adequate complaint without reference to the complaint already filed. Fed. R. Civ. P. 8(e)(1).

7. The Clerk's Office shall sent Plaintiff two copies of this Court's civil rights complaint form; and

8. Mr. George's failure to comply with this Order will result in the dismissal of this action.

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**